UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
RAMIRO LINARES MARTINEZ,                            :
                                                    :
                            Petitioner,             :      18-CV-6527 (JMF)
                                                    :
            -v-                                     :      OPINION AND ORDER
                                                    :
THOMAS DECKER et al.,                               :
                                                    :
                            Respondents.            :
                                                    :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Petitioner Ramiro Linares Martinez ("Linares"), a citizen of El Salvador facing potential removal, was detained, pursuant to Title 8, United States Code, Section 1226(a), following an individualized bond hearing at which he bore the burden of proving that his release would not pose a danger to property or persons. The question presented here — raised in a petition for the writ of habeas corpus, filed pursuant to Title 28, United States Code, Section 2241 — is whether the Due Process Clause of the Fifth Amendment required the burden to be placed on the Government to justify Linares's detention. The Court concludes that it did — indeed, that the Due Process Clause required the Government to prove, by clear-and-convincing evidence, that Linares's detention was justified. Accordingly, Linares's Petition is GRANTED.

## BACKGROUND

The relevant facts are largely undisputed. Linares entered the United States in approximately October 1999. (Docket No. 1 ("Pet'n") 2 ¶ 3).[1] On February 9, 2018, Linares

---

[1] Because some paragraph numbers in Linares's Petition repeat, references to his Petition include both the paragraph number and the page number on which the cited paragraph begins.

was arrested and charged in Rockland County, New York, with sexual abuse in the first and second degree, forcible touching, and endangering the welfare of a child — charges arising out of conduct allegedly occurring between Linares and his stepdaughter between approximately 2011 to 2014. (*Id.* at 9 ¶¶ 26-27). On February 15, 2018, Linares was ordered released on his own recognizance based on the prosecution's failure to secure an indictment. (*Id.* at 9 ¶ 28). When Linares was released from criminal custody, however, he was immediately detained by immigration authorities pursuant to Section 1226(a). (*Id.* at 9 ¶ 28). Linares contends that, as a result of his immigration detention, he missed three criminal court dates and has been unable to meet or speak with his court-appointed defense attorney. (*Id.* at 10 ¶ 29).

Linares first appeared before an Immigration Judge ("IJ") on April 19, 2018. (*Id.* at 10 ¶ 31). At that hearing, his counsel requested a continuance to investigate appropriate applications for relief, and his case was adjourned to May 25, 2018. (*Id.*). Linares then filed three applications for relief from removal. At a hearing on May 25, 2018, the IJ scheduled a hearing on the applications for relief for August 8, 2018, and denied Linares bond. (*Id.* at 10-11 ¶¶ 32, 35, 36). In a subsequent memorandum explaining that decision, the IJ declared that "[a]n alien subject to bond under [Section 1226(a)] bears the burden of establishing that he or she is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'" (Pet'n, Ex. 5 ("IJ Memo") at 2 (quoting *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006)). The IJ stated that the alien was required to make that showing by clear-and-convincing evidence. (*Id.*). The IJ acknowledged that various considerations — including Linares's "lengthy residence in this country and family ties" — cut in favor of his release, but ultimately concluded that those considerations were "insufficient for [Linares] to meet his burden of proof in light of the gravity of the pending charges." (*Id.* at 3).

Linares appealed the IJ's bond determination to the Board of Immigration Appeals ("BIA"). (Docket No. 12 ("Gov't Return"), Ex. 3 ("BIA Appeal Br.")). Additionally, on July 19, 2018, he filed the instant Petition. On July 25, 2018, the Rockland County District Attorney moved to reduce Linares' felony charges to misdemeanor charges. (Docket No. 17 ("Reply Br."), Ex. 1, ¶ 4). Citing the reduction in the charges, on August 22, 2018, Linares's counsel filed a motion with the IJ for bond reconsideration based on changed circumstances. (Reply Br., Ex. 2). A day later, the BIA denied Linares's appeal. (Reply Br., Ex. 3 ("BIA Decision")).[2] In accordance with prior decisions holding that the burden of proof in a Section 1226(a) bond hearing is on the alien, the BIA found that it was Linares's "burden to show that he does not present a danger to the community or a risk of flight." (*Id.* at 2 (citing *Matter of Adeniji*, 22 I&N Dec. 1102, 1111-13 (BIA 1999))). The BIA did not apply the clear-and-convincing evidence standard that the IJ had, but it nevertheless "arrive[d] at the same conclusion" as the IJ based on the "serious accusations underlying the felony complaint." (*Id.* at 3). On October 3, 2018, the IJ denied Linares's motion for reconsideration on the ground that the reduction in charges did not "constitute changed circumstances." (*See* Docket No. 18).

## DISCUSSION

As noted, Linares argues that his detention violates due process because the burden of proof at his bond hearing was imposed on him rather than on the Government.[3] The Fifth

---

[2] In light of the BIA's decision, the Government's argument that Linares's challenges should be denied for failure to exhaust his administrative remedies (*see* Docket No. 13 ("Resps.' Br."), at 8) is moot. *See, e.g.*, *Zebrowski v. Evonik Degussa Corp. Admin. Comm.*, No. CIV.A. 10-542, 2011 WL 767444, at *3 (E.D. Pa. Feb. 24, 2011).

[3] In the alternative, Linares contends that imposing the burden of proof on him rather than the Government violated Section 1226(a) and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (Pet'n 30-31, ¶¶ 65-68, 73-75). Although a court should generally abstain from reaching a constitutional question if a case be resolved on statutory grounds, *see, e.g.*, *Slack v. McDaniel*, 529 U.S. 473, 485 (2000) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936)

3

Amendment's Due Process Clause forbids the Government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. The Supreme Court has emphasized that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In fact, the Court has repeatedly reaffirmed that "civil commitment *for any purpose* constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979) (emphasis added); *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (holding that, in order to justify continued confinement of a mentally ill person after a not-guilty-by-reason-of-insanity verdict, a state bears the burden of showing "by clear and convincing evidence that the individual is mentally ill and dangerous" (internal quotation marks omitted)); *Kansas v. Hendricks*, 521 U.S. 346, 353-56 (1997) (holding that a civil commitment statute satisfied the Due Process Clause in part because it "plac[ed] the burden of proof upon the State").

The Court's decision in *Addington* is particularly instructive. That case involved the question of what process is due in connection with civil commitment proceedings. The Court acknowledged that the "state has a legitimate interest" in "protect[ing] the community from the dangerous tendencies of some who are mentally ill." 441 U.S. at 426. At the same time, the Court observed that involuntary commitment to a mental hospital obviously "can have a very significant impact on the individual." *Id.* Noting that "the function of legal process is to

---

(Brandeis, J., concurring)), that rule is not an inflexible command, *see, e.g.*, *Nicholson v. Scoppetta*, 344 F.3d 154, 170 (2d Cir. 2003). Here, there are reasons to depart from it. Among other things, the Court is inclined to believe that the Government has the better of the statutory arguments (*see* Resps.' Br. 17-23, 28-30), in which case the Court would have to reach Linares's constitutional arguments anyway. *See Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 n.6 (D. Mass. 2018) (declining to reach the petitioner's statutory arguments after concluding that his hearing violated due process).

minimize the risk of erroneous decisions," the Court ultimately concluded that — weighing these interests against one another — "[t]he individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Id.* at 425-27. Thus, the Court held, a "clear and convincing standard . . . is required to meet due process guarantees" in civil commitment proceedings. *Id.* at 433; *see also Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) ("[D]ue process places a heightened burden of proof *on the State* in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money." (emphasis added) (internal quotation marks omitted)).

Significantly, these principles apply to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("[T]he Fifth Amendment entitles aliens to due process in deportation proceedings."). And even more significantly for present purposes, the Ninth Circuit and various district courts — including several in this Circuit — have applied these principles to hold that where, as here, the Government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011); *Pensamiento*, 315 F. Supp. 3d at 692; *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *10 (S.D.N.Y. July 25, 2018); *Frederic v. Edwards*, No. 18-CV-5540 (AT), Docket No. 13 (S.D.N.Y. July 19, 2018); *Argueta Anariba v. Shanahan*, No. 16-CV-1928 (KBF), 2017 WL 3172765, at *4 (S.D.N.Y. July 26, 2017); *see also Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018) ("Because the Government waived any argument regarding who bears the burden and what showing must be made at a bond hearing, and because the untimely

5

argument advanced at oral argument is unsupported by precedent and is otherwise not persuasive, the Court concludes that at the Petitioner's bond hearing, the Government must justify [the Petitioner's] continued detention by proving by clear and convincing evidence that he is a flight risk or danger to the community.").

These cases are persuasive. The Government certainly has an interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alteration omitted). At the same time, for detainees like Linares, who can face years of detention before resolution of their immigration proceedings, "the individual interest at stake is without doubt 'particularly important and more substantial than mere loss of money.'" *Singh*, 638 F.3d at 1204 (quoting *Santosky*, 455 U.S. at 756); *see, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830, 860 (2018) (Breyer, J., dissenting) (noting that class members had been detained for periods of time ranging from six months to 831 days). The balance of these interests, by itself, supports imposing the greater risk of error on the Government — specifically, by allocating to it the burden of proof. Several other considerations reinforce that conclusion. First, as a general proposition, it makes more sense to impose the greater risk of error on the party that seeks to change the legal status quo, the Government here. *See, e.g.*, *Foucha*, 504 U.S. at 86 (holding unconstitutional a civil detention scheme in which "the State claim[ed] that it may continue to confine [the detainee] . . . without assuming the burden of proving [the need] for confinement by clear and convincing evidence"); *see generally* Richard H. Gaskins, BURDENS OF PROOF IN MODERN DISCOURSE 23 (1992) (explaining that, generally, the party that seeks the law's intervention is the party that bears the burden of proof). Second, placing the burden on the Government, like raising the standard of proof, "is one way to impress the factfinder with the importance of the decision and thereby

6

perhaps to reduce the chances that inappropriate commitments will be ordered." *Addington*, 441 U.S. at 427. And third, for a number of reasons, the Government is generally in a better position than a detained alien to gather and present evidence relevant to the bond determination. *See* Alina Das, *Immigration Detention: Information Gaps and Institutional Barriers to Reform*, 80 U. Chi. L. Rev. 137, 157-58 (2013) ("[D]etention itself makes such information acquisition relatively difficult for the noncitizen [because] . . . [d]etained noncitizens have no right to government-appointed counsel[,] [d]etained noncitizens may be held in any facility across the United States, and many are transferred far from their families and communities.").

The Government's arguments to the contrary do not withstand scrutiny.[4] Quoting *Demore v. Kim*, 538 U.S. 510 (2003), the Government argues, first, that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." (Resps.' Br. 24 (internal quotation marks omitted)). As other courts have noted, however, *Demore* has only limited relevance to the type of challenge here. For one thing, *Demore* "involved criminal aliens subject to mandatory detention" under Section 1226(c) — that is, a class of presumptively unbailable aliens whose detention Congress had deemed to be necessary and reasonable. *Figueroa v. McDonald*, No. 18-CV-10097 (PBS), 2018 WL 2209217, at *5 (D. Mass. May 14, 2018). Section 1226(a), by contrast, "permits release of non-criminal aliens pending their removal proceedings." *Id.*; *see also Pensamiento*, 315 F. Supp. 3d at 692 ("*Demore* is not applicable [in the Section 1226(a) context] because it involved criminal aliens subject to mandatory detention."). Second, as the Second Circuit

---

[4] One of its arguments — that the Court lacks jurisdiction to review Linares's detention (Resps.' Br. 14-16) — barely warrants scrutiny. It is well established that Section 1226(e), the provision upon which the Government relies in making its argument, does not preclude judicial review of "[c]laims of constitutional infirmity in the procedures followed at a bond hearing." *Bogle v. DuBois*, No. 16-CV-6178 (CS), 2017 WL 747876, at *2 (S.D.N.Y. Feb. 16, 2017).

7

emphasized, "a core component of the holding in *Demore* was the 'brief period[s]' of detention at issue."  *Hernandez*, 2018 WL 3579108, at *11 (quoting *Lora v. Shanahan*, 804 F.3d 601, 614 (2d Cir. 2015), *judgment vacated on other grounds*, 138 S. Ct. 1260 (2018)); *see Demore*, 538 U.S. at 529 (noting that, on average, detention under Section 1226(c) lasted only one and a half months).  It is, at best, an open question whether the average length of immigration detention today is so brief.  *See Hernandez*, 2018 WL 3579108, at *11 ("The country has seen a dramatic increase in the average length of detention since *Demore*." (internal quotation marks omitted)).  And in any event, "simply requiring that IJs impose a more exacting standard on government attorneys does not equate to requiring that IJs 'employ the least burdensome means' to ensuring an individual returns to court, as it still affords the IJ some discretion in his or her determination."  *Id.*

Ironically, the Government itself tries to distinguish *Hernandez* and *Sajous* on the ground that they both concerned mandatory detention under Section 1226(c), and not discretionary detention under Section 1226(a).  (Resps.' Br. 27-28).  That argument, of course, ignores the slew of cases, cited above, involving detention under Section 1226(a).  Moreover, if anything, the distinction between Section 1226(a) and Section 1226(c) cuts the other way.  Section 1226(c) concerns criminal aliens who are presumptively unbailable.  Section 1226(a), by contrast, governs the detention of non-criminal aliens, including "ordinary visa violators." *Zadvydas*, 533 U.S. at 697.  It would be "both illogical and legally unsound" to afford greater procedural protections to aliens detained under Section 1226(c) than to aliens detained under Section 1226(a).  *Nguti v. Sessions*, 259 F. Supp. 3d 6, 10 (W.D.N.Y. 2017); *see also Brevil v. Jones*, 283 F. Supp. 3d 205, 213-14 (S.D.N.Y. 2018) ("The Government's position, if accepted, would result in criminal aliens detained under § 1226(c) receiving greater procedural protections against

prolonged detention than non-criminal aliens detained as an exercise of discretion under § 1226(a)."). *Hernandez* and *Sajous*, therefore, provide support for Linares's position.

Finally, the Government suggests (albeit only in passing) that the Supreme Court's decision in *Jennings* controls the outcome of this case. (Resps.' Br. 27). But the *Jennings* Court held, *as a statutory matter*, that Section 1226(a) does not require the Government to bear a clear-and-convincing evidence burden in bond hearings. *See* 138 S. Ct. at 847-48. *Jennings* explicitly left open the question of what *constitutional* procedural protections are required. *See id.* at 851 ("Consistent with our role as a court of review, not of first view, we do not reach [respondents' constitutional] arguments." (internal quotation marks omitted).); *see also Hernandez*, 2018 WL 3579108, at *11. In other words, *Jennings* did not reach the question presented here and previously addressed by the Ninth Circuit in *Singh*. *See Singh*, 638 F.3d at 1204. It is, therefore, incorrect to state, as the Government does, that "*Singh* conflicts with the Supreme Court's subsequent decision in *Jennings*." (Resps.' Br. 27).

Thus, in accordance with every court to have decided this issue, the Court concludes that due process requires the Government to bear the burden of proving that detention is justified at a bond hearing under Section 1226(a). One question remains: what the precise burden should be. One court has held that due process does not require the Government's burden to be a heightened one. *See Pensamiento*, 315 F. Supp. 3d at 693 (holding that the Due Process Clause requires only that Government "prove to the satisfaction" of the IJ that the alien is dangerous or a risk of flight (internal quotation marks omitted)). The overwhelming majority of courts to consider the question, however, have concluded that "imposing a clear and convincing standard would be most consistent with due process." *Hernandez*, 2018 WL 3579108, at *11; *accord Singh*, 638 F.3d at 1204; *Argueta Anariba*, 2017 WL 3172765, at *4; *see also, e.g.*, *Guerrero-Sanchez v.*

*Warden York Cty. Prison*, — F.3d —, No. 16-4134, 2018 WL 4608970, at *12 n.12 (3d Cir. Sept. 26, 2018). The majority view is more consistent with the Second Circuit's decision in *Lora*, which — although vacated by the Supreme Court following *Jennings* — "remains strong persuasive authority in this Circuit." *Hernandez*, 2018 WL 3579108, at *6 (internal quotation marks omitted). It is also more faithful to *Addington* and the other civil commitment cases cited above. *See Addington*, 441 U.S. at 432-33 ("To meet due process demands, the standard has to inform the factfinder that the proof must be greater than the preponderance-of-the-evidence standard applicable to other categories of civil cases."); *Foucha*, 504 U.S. at 80 (requiring clear-and-convincing evidence). Accordingly, the Court agrees with the *Singh*, *Hernandez*, and *Sajous* Courts and holds that, as a matter of due process, the Government must prove by clear-and-convincing evidence that an alien poses a risk of flight or a danger to the community before he or she may be detained under Section 1226(a).

It follows that Linares is entitled to a new bond hearing at which the Government is required to shoulder that burden to justify his continued detention. The Government half-heartedly contends that this is not the case because Linares cannot show that he was prejudiced by any due process violation. (Resps.' Br. 34). But the IJ plainly could have found that the single set of charges — now reduced to misdemeanors — was not enough to show, by clear-and-convincing evidence, that Linares's release would pose a danger. *See Pensamiento*, 315 F. Supp. 3d at 693 (concluding that the IJ "could well have found that [the alien] was not dangerous based on a single misdemeanor conviction"); *see also Figueroa*, 2018 WL 2209217, at *6. And the

IJ's comment that Linares had shown his "lengthy residence in this country and family ties" suggests that the risk of flight would not, in the IJ's view, call for detention. (*See* IJ Memo 3).[5]

## CONCLUSION

For the reasons stated above, Linares's Petition is GRANTED. **Within seven calendar days of this Opinion and Order,** the Government shall take Linares before an immigration judge for an individualized bond hearing. At that hearing, the Government shall bear the burden to demonstrate, by clear-and-convincing evidence, that he is a danger to the community or a flight risk. Should the Government fail to provide Linares with such a bond hearing within seven calendar days, the Government shall immediately release him.

The Clerk of Court is directed to close this case.

SO ORDERED.

Date: October 17, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[5] In light of the Court's conclusion that Linares is entitled to a new bond hearing as a matter of due process, the Court does not reach his argument that the IJ erred by relying on a "felony complaint that contains unsworn, hearsay allegations." (Pet'n 25 ¶ 49).